AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>iPhone Model: 12 Pro, IMEI: 353165804694515 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  '22 MJ00883

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-Target Device 1, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841 | Poss. of Cocaine with Intent to Distribute; |
| 18 USC s. 922(g), 924(c) | Felon in Poss. of a Firearm; Poss. of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:

See attached Affidavit of ATF Special Agent Amanda Renteria, incorporated herein by reference.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

AMANDA RENTERIA          Digitally signed by AMANDA RENTERIA
                        Date: 2022.03.01 15:02:41 -08'00'

*Applicant's signature*

Amanda Renteria, Special Agent, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: ___03/0̶1̶/2022___
       04

*Judge's signature*

City and state:  San Diego, CA

JILL L. BURKHARDT, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

a. iPhone Model: 12 Pro, IMEI: 353165804694515; Target Device 1;

b. iPhone Model: 8, IMEI: 356845112788052 W/SIM Card: 8901260786189002298, Target Device 2;

c. iPhone Model: 8, IMEI: 356854113404065 W/SIM Card: 8901240224121034653, Target Device 3; and

d. iPhone Model: 12 Pro, IMEI: 352853115384246 W/SIM Card: 8901410327275666167, Target Device 4.

The Target Devices are currently in the possession of the Bureau of Alcohol, Tobacco, Firearms & Explosives, San Diego II Field Office, 9449 Balboa Avenue, Suite 200, San Diego, CA, 92123.

**ATTACHMENT B**

<u>ITEMS TO BE SEIZED</u>

Authorization to search the Target Devices (Target Device 1, Target Device 2, Target Device 3 and Target Device 4) described in Attachment A, respectively, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.  The seizure and search of the Target Devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the Target Devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 20, 2021, up to and including January 20, 2022:

a.   tending to identify attempts to possess cocaine or other federally controlled substances with the intent to distribute them within the United States;

b.   tending to identify other accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States;

d.   tending to identify travel to or presence at locations involved in the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

e.   tending to identify efforts to obtain or otherwise possess firearms, ammunition, or firearm parts, such as magazines, and tending to identify the intended purpose for the possession of the firearm(s);

f.   tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

g.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which is evidence of violations of Title 21, United States Code, Sections 841; and Title 18, United States Code, Sections 922(g) and 924(c).

<u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS</u>

I, Amanda Renteria, being duly sworn, hereby state as follows:

<u>INTRODUCTION</u>

1.    I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

     a.    iPhone Model: 12 Pro, IMEI: 353165804694515;  Seized as San Diego Police Department, Property Item 1, under   case number 22002773, and believed to be used by Daniel VILLEGAS. ("Target Device 1");

     b.    iPhone Model: 8, IMEI: 356845112788052 W/SIM Card: 8901260786189002298, Seized as San Diego Police Department, Property Item 2, under case number 22002773, and believed to be used by Daniel VILLEGAS. ("Target Device 2");

     c.    iPhone Model: 8, IMEI: 356854113404065 W/SIM Card: 8901240224121034653, Seized as San Diego Police Department, Property Item 3, under case number 22002773, and believed to    be used by Daniel Keith BARRANTES. ("Target Device 3"); and

     d.    iPhone Model: 12 Pro, IMEI: 352853115384246, W/SIM Card: 89014103272756661167, Seized as San Diego Police Department, Property Item 4, under case number 22002773 and believed to be used by Daniel Keith BARRANTES. ("Target   Device 4");

all collectively known as the "Target Devices."

2.    As further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code Sections 841 and Title 18, United States Code, Sections 922(g) and 924(c), as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of DANIEL BARRANTES and DANIEL VILLEGAS for having been in possession of approximately 3.3 grams of actual cocaine and a firearm. The Target Devices are currently in the custody of the Bureau of Alcohol, Tobacco, Firearms & Explosives, San Diego II Field Office, 9449 Balboa Avenue, Suite 200 San Diego, CA, 92123.

3.    The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement.

Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

<u>BACKGROUND</u>

4.     I am an investigative officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21 of the United States Code.

5.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been employed since September of 2020.  I have been trained in the Federal Law Enforcement Training Center under the following programs: Criminal Investigator Training Program and Special Agent Basic Training.

6.     During my law enforcement career, I have received formal training in narcotics and gang investigations. I have participated in multiple separate investigations involving the distribution of controlled substances and firearms. As part of these investigations, I have used various investigative techniques, including physical and stationary surveillance, informants and cooperating sources, court authorized interceptions, pen register/trap and trace devices, telephone toll analysis, undercover operations, physical searches, mail covers, and electronic examinations of evidence. Through these previous investigations, I have obtained knowledge regarding the ordinary meaning of controlled substance slang and jargon.

7.     Through the course of my training, investigations, prior law enforcement experience, and conversations with other law enforcement personnel, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. I am aware that it is a common practice for individuals involved in the distribution of controlled substances to work in concert with other individuals and to do so by utilizing cellular telephones and other portable communication devices to

maintain communications with co-conspirators in order to further their illicit criminal activities. I am also aware that it is a common practice for individuals involved in the manufacturing and distribution of controlled substances to communicate with buyers regarding arrangements and payments utilizing cellular telephones. Based on my training and experience, I am aware that conspiracies involving the manufacture and distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements and payment, names, photographs, text messages, and phone numbers of co-conspirators. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the distribution of narcotics may yield evidence:

a.    tending to identify attempts to possess cocaine or other federally controlled substances with the intent to distribute them within the United States;

b.    tending to identify other accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States;

d.    tending to identify travel to or presence at locations involved in the possession of cocaine or other federally controlled substances with the intent to distribute them within the United States, including stash houses, load houses, and/or delivery points;

e.    tending to identify efforts to obtain or otherwise possess firearm, ammunition, or firearm parts, such as magazines, as well as communications tending to demonstrate the intended purpose for the possession of the firearm(s);

f.    tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8.    On or about January 20, 2022, San Diego Police Department ("SDPD") Officers were on patrol in the City of San Diego, California, within the Southern District of California. SDPD Officers responded to a radio call of a disturbing the peace call involving a firearm near the intersection of Gresham Street and Grand Avenue.  The

reporting party stated that they observed the driver of a parked blue Porsche SUV drop a handgun onto the ground when exiting the vehicle.  The driver recovered the handgun and placed the handgun either on their person or inside the vehicle.

9.    Arriving SDPD Officers observed the blue 2018 Porsche 4-door, SUV, bearing California license plate 8RCL929, parked along the west curb line at the intersection of Gresham Street and Grand Avenue. The blue Porsche appeared to have the engine running with the headlights on. Due to officer safety considerations, SDPD Officers drove around the block and approached the blue Porsche from the rear. The blue Porsche's brake lights were illuminated. Because the officers had information that the occupants of the vehicle were armed with a firearm, SDPD Officers conducted a high-risk vehicle stop on the blue Porsche and activated the SDPD marked patrol vehicle overhead emergency lights.

10.    SDPD Officers instructed the driver of the vehicle, later identified as DANIEL VILLEGAS ("VILLEGAS") to exit the vehicle first.   SDPD Officers instructed the passenger of the vehicle, later identified as DANIEL BARRANTES ("BARRANTES") to exit the vehicle next.  Both VILLEGAS and BARRANTES were placed in the backseat of separate SDPD vehicles.

11.    SDPD Officers conducted a search of the vehicle for weapons.  During the search of the vehicle, officers located a black, "fanny pack" style bag bearing the name "Cookies" in white lettering.  During the search of the fanny pack, SDPD Officers found the following: a loaded firearm, stamp marked as a "Smith and Wesson, model SW9VE," 9-millimeter pistol bearing serial number "RBJ6794;" a magazine containing nine rounds of 9-millimeter ammunition inserted into the magazine well of the firearm; and two individual clear plastic baggies containing a white powdery substance which presumptively tested positive for cocaine with an approximate net weight of 3.3 net grams; a brown leather wallet containing numerous credits cards for "Daniel Villegas" and a California Driver's License for "Daniel Villegas," and $8,313 in various US denominations.  The fanny pack was in close proximity of were both VILLEGAS and BARRANTES were observed sitting in the vehicle.

12.    During the search of the vehicle, SDPD Officers located a black checkered Louis Vuitton bag, located in the middle section of the backseat, containing an additional $1,360 in various US denominations.  SDPD Officers located a wallet with credit cards belonging to "Daniel Barrantes" and a Costco Card bearing "Daniel Barrantes" with a photograph of his face.

13.    Furthermore, SDPD Officers located a total of four cellphones inside the vehicle. Two cellphones were located on the driver's seat;(1) an iPhone Model: 12 Pro, IMEI: 353165804694515 and (2) an iPhone Model: 8, IMEI: 356845112788052 W/SIM Card: 8901260786189002298.  Two additional cellphones were located on the passenger's seat;  (3)  an  iPhone  Model:  8,  IMEI:  356854113404065  W/SIM  Card: 8901240224121034653; and (4) an iPhone Model: 12 Pro, IMEI: 352853115384246 W/SIM Card: 89014103272756661167.

14.    Both VILLEGAS and BARRANTES' phones received multiple text messages, phone calls and notifications from saved contacts and unsaved numbers throughout the SDPD encounter.  The names were as follows: "Mofo 2021","Kat" and "Branden." On one of the phones on the passenger seat, a text message from an unsaved number (619-XXX-6208) showed the following message, "tell homie to save me 3, I need them tomorrow." This unsaved number also called the same phone. In my training and experience, and in the experience of officers and agents I work with and rely upon, this is an example of coded drug talk related to the sale of controlled substances.

15.    Based  upon  my  training  and  experience  as  it  pertains  to  narcotic  related investigations, dealers are known to contact subjects looking to buy drugs *via* cell phone and commonly classify them with nicknames or a lack of personal identifiable information to conceal their identity. Dealers are also known to carry multiple phones or "burner" phones which contain the contact information of their buyers.  Drug dealers are also known to carry firearms for personal protection when conducting deals.  Fanny packs are most typically worn around the waist to contain personal items in a way that allow subjects to maintain sight on their pack. The firearm being in a fanny pack along with the recovered illegal narcotics and large sums of money reasonably indicate a drug deal had just occurred or was about to occur. Based on my training and experience the two individually plastic baggies, containing the white powdery substance, appeared to be more than a personal amount.  Cocaine is commonly found in the Pacific Beach area where this incident occurred due to the high demand from subjects who frequent the business and entertainment district nearby. Based upon these facts, I believed BARRANTES and VILLEGAS possessed the cocaine with the intent to sell. Moreover, in my training and experience, and in the experience of officers and agents I work with and rely upon, the presence of a distributable amount of narcotics packaged for sale, a large sum of cash, a loaded firearm, and multiple cellphones actively receiving coded drug related texts is a strong indication of narcotics trafficking.  In addition, cellphones are a common device used

by traffickers in the planning and coordination of a drug trafficking event in the days, weeks, and months prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Further, co-conspirators are often in communication in the days and weeks after a trafficking event, as the drug distribution conspiracy continues. I also know, based on my training and experience, that drug traffickers frequently use multiple phones, commonly change their phones often, and, using services such as cloud-based data backup programs, transfer data from one phone for another. Accordingly, I request permission to search the Target Devices for data beginning on July 20, 2021, up to and including January 20, 2022, the date of Defendant's arrest.

16.    A record check on BARRANTES revealed that he was a convicted felon, having been convicted of California Penal Code Sections 550(a)(4) and (c)(1), and served a state prison sentence.  Additionally, BARRANTES was at the time of this incident out on bond as of January 9, 2022, on a pending domestic violence case.

<u>METHODOLOGY</u>

17.    It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process

and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.    Following the issuance of this warrant, I will collect the Target Devices and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.    Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## CONCLUSION

20.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of BARRANTES' and VILLEGAS' violations of Title 21, United States Code, Sections 841 & and Title 18, United States Code, Sections 922(g) & 924(c). Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

    I swear the foregoing is true and correct to the best of my knowledge and belief.

AMANDA RENTERIA  Digitally signed by AMANDA RENTERIA
                 Date: 2022.03.01 15:06:25 -08'00'
_____
AMANDA RENTERIA, Special Agent
Bureau of Alcohol Tobacco and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __4th__ day of March 2022.

_____
JILL L. BURKHARDT
United States Magistrate Judge